When you're ready, Counselor. Thank you very much. Alan David Kauffman, appearing for Mr. Essa, the petitioner, and I'm David Kauffman. Ms. Essa has argued the record does not support the Board's finding that he, his sister, otherwise participated in the persecution of others who made any material misrepresentations which would require him to obtain a waiver in order for his application for adjustment of status to be granted. The Board adopted the immigration judge's conclusion that Mr. Essa did not personally persecute anyone, that his activities, but found that his activities materially targeted and eventually led to the persecution of others. Now, with respect to the question of adjustment of status, I don't think it's essential in this case for him to have been found to be a torturer. I think it's only essential that he be found to have materially misrepresented facts in order to obtain an immigration benefit. Am I right in terms of just what the statute says? Yes, but I think that the misrepresentation is the heart of the judge's finding becomes with his participation in the persecution of others. Well, the district, I mean, the IJ found that he lied about a lot of stuff. Not just about that. I believe, okay. Also, I'd like to reserve five minutes for rebuttal. I'm sorry. Keep track and we'll make sure you get to say everything you need to say. Thank you very much. Mr. Issa has consistently maintained that his duties only included the collection of information about people's comings and goings, which he then reported to his superiors. That he was unaware of anyone being persecuted on account of the information that he provided. Well, on the one hand he does say that, but yet on the other hand he also indicated that the information that he provided led to the arrest of individuals who were suspected of placing bombs, including innocent persons. So when you look at his statements in the declaration that he submitted in support of the application for asylum, to his interview with the asylum officer, to then his testimony before the IJ, I think it's hard to say that there aren't conflicting statements on some pretty key issues. So how does he reconcile or explain some of those inconsistencies? Mr. Issa explained at his hearing before the immigration judge that it was his understanding that the translator, which he brought to the, which he supplied, admittedly he supplied, supplemented his answers with his own words. And in support of that he submitted a declaration from the translator, attesting the fact that he did in fact add materials to his translation, add statements, and similarly, as he explained at the hearing, that the written application itself was simply read back to him in general, not verbatim. That his English at the time of the interview and at the time the application was prepared was extremely limited, and he was dependent on the people who were preparing those applications. So there were some of the statements in the declaration attached to the I-589, the application for asylum, that he said, which he disavowed, so were not his words. The statements attributed to him from the asylum office, the entire asylum office process is somewhat problematic. There is no accurate record of that interview. There are handwritten notes, the foundation for which was the asylum office, or just he had no independent recollection of what went on at that interview. The asylum office is capable of monitoring translations for accuracy. There's no evidence that that was done. The CISA in his declaration attached to his application for a waiver said that on at least two occasions, it's his understanding from the translator, on two separate occasions, the asylum officer, yes. So just to sum up, to the extent that there were problematic statements in his declaration, that's because the preparer didn't read it to him verbatim. To the extent that there were problems in his statements to the asylum officer, that's the interpreters adding additional information. That's the explanation explaining the inconsistency. That's the explanation, and in support of that, the CISA submitted a declaration from the translator who attended his asylum office interview corroborating that fact. And I believe that is at page 445 of the administrative record for the Immigration Court Purposes Exhibit R9. The information that simply the gathering of raw data, I think, into the CISA document, that's the information that maintains that that amounts to participating in the persecution or assisting in the persecution of others, I think is inconsistent with this Court's ruling in Lepenix from 1985, 752nd, 1427, that in which case a, Mr. Lepenix was investigating Soviet sympathizers, and the Court found in that case that simply gathering information regarding a certain group of people did not amount to persecution where there was no control or no knowledge what happened to that information after he passed it on. So it would... Now, I've got two questions that I want to ask that are related. The first one is with respect back to just adjustment of status. And as I read the statute, as I indicated earlier, if he lies in order to obtain an immigration benefit, that disqualifies him. It doesn't matter that he did or didn't obtain it. He lied in order to try to obtain it. There seems to be a fair amount of support for the IJ's conclusion that he is not credible. But the other point I'm after, and I'm not sure that it is the same thing, and that is we've got two proceedings here. One is the adjustment of status, and the other one is the underlying proceeding in which he sought asylum and withholding and CAD and so on. First off, how do we deal with the fact that the immigration judge finds that he lied in order to obtain an immigration benefit, which is a different proposition from finding that he was actually a torturer? I believe that the immigration judge's finding that he made this representation rests largely on the asylum office interview notes and inconsistencies. And I think that that whole process is problematic and does not support a finding that Mr. Issa was changing his, I'm sorry, his position on the matter. I'm drawing claim to asylum because I believe there's no really accurate evidence of what transpired at that interview, that the handwritten notes are not sufficient to really tell exactly what was said and what was omitted. In addition, you have this added problem where it was translated. Okay, I've got that. That's more or less what you've said already. My second question is, I assume we have in front of us not only the question of whether he was properly denied adjustment of status, but also whether he was properly denied asylum and withholding and whether he's only got this restricted CAT. What's the burden of proof as to torturer? How much of the burden of proof does he bear? How much does the government bear on the torturing question? I believe that the record shows that he met his burden of proof. I'm going to answer a different part of this. This is just a straightforward legal question. Who bears the burden of proof as to what with respect to torturing? It is that the government bears the burden of proof to establish that a person participated, has the initial burden of proof to show that there is a prima facie evidence that he met his burden of proof. And that his actions amounted, constituted the, constituted assisting in the persecution of others. Once that's met, then the burden to rebut shifts to the petitioner. But the government always maintains a burden of proving that a person has met his burden of proof. And that he is disqualified for, under those elements. And for my time, or even to my rebuttal time, just want to point out that the CISA was granted deferral under the CAT, under the Convention Against Torture. But it was a very restricted CAT. It was only he doesn't get deported to Yemen. Correct. But the burden of proof for that is by clear and convincing evidence that he'd be subject to torture or other inhumane treatment if he was sent to Yemen. So that he did meet the burden of proof that he was going to, the lower burden, which is just more likely than not, or preponderance of the evidence, that for asylum. And it wasn't that he didn't meet his burden of proof for asylum. He did. He would have to, because the higher burden under the Convention Against Torture, it is only that the judge found he was otherwise disqualified for asylum. I'm down to a little under two and a half minutes I'd like to reserve. Thank you. Good morning. My name is Kevin Conway, and I am here to represent the Attorney General of the United States in the matter before the Court. Substantial evidence in this case supports the agency's finding that Mr. Essa is ineligible for asylum and withholding of removal because he was not credible, also because he failed to meet his burden of showing that he did not participate in the persecution of others, and because he willfully misrepresented material fact to obtain an immigration benefit. And the evidence in the record does not compel a contrary conclusion, which is the standard in this case. Now, as to the asylum and withholding question, as I look at the record and as I look at what the I.J. did, she finds him not credible and finds that the torture bar stands in the way. Now, if the torture bar didn't stand in the way, but he's nonetheless incredible as the story he tells, I'm trying to figure out if there were no torture bar, would he be entitled to asylum based on the record we have in front of him? That is to say, what's the underlying basis, what's the nexus that would allow this to be persecution on account of a protected ground? If I understand your question correctly, would the immigration judge have been correct in denying asylum and withholding if she did not find that he was a persecutor? Correct. His claim, which is based on the fact that he was tortured and detained in Yemen, there are so many versions of that, and it's very difficult. In fact, I would submit to you, if you haven't read the, tried to read the petitioner's testimony, both in 2003 and in 2007, it's very frustrating to try and follow it. However, he would have, the immigration judge would have been within rights to desire asylum and withholding based on the adverse credibility determinant alone. Well, but the IJ is willing to say that there's a sufficient likelihood of tortures to say that he's not going to be deported. Now, she says the only restriction on he can't be deported to Yemen, but she finds that there's a likelihood of torture. So I think we've got a well-founded fear of bad treatment. So the question is in connection to a protected ground. So how do you say there's no connection to a protected ground, given that she's willing to believe, the IJ is willing to believe that he risks torture? Well, I don't necessarily think that it's a protected ground because of the reason that he...  You need to, you need to tell me that there's no protected ground in order to say he's not entitled to asylum. Well, Your Honor, well, there's, it's interesting throughout the testimony that Mr., I don't think there's any doubt that Mr. Essa worked for the PSP or the PSO or the whatever. Correct. And he also, the only evidence we have that the PSP was displeased with him are the summonses that he received. To go before various people in the ranks. And the only things that those indicate is that he had substantive performance of work. There is no indication that it was because of any political opinion he held or because of the fact that he might have been a socialist. That's based on his testimony. But it's pretty clear that PSP, if you believe what is, was said by Mr. Essa and by what is in the documentary evidence, that PSP does engage in torture, does engage in various acts that would be considered persecutory. So I think that's the basis on which the immigration judge found that it was, it was a chance that he could be persecuted if he went back or could be harmed if he went back. Not necessarily because of a political opinion that he held, but because he was, had brought down displeasure of the, of the command. And also because of his testimony saying that they didn't want to let him go because he knew too much, too much of what their activities were. And that was the basis for the immigration judge's determination that he might be harmed if he went back. Okay. With regard to adjustment of his status, the BIA found him inadmissible based on a willful misrepresentation. And the misrepresentation that the BIA identified is the fact that, or the immigration judge specifically cited, I'm looking at the BIA decision here, cited his admission to the asylum officer that he assisted an organization that killed, jailed and tortured innocent people and then later disavowed that statement. Can you address whether substantial evidence supports that finding of willful misrepresentation as to the material point given what counsel indicated, the problems with interpretation? I think there were at least one, if not multiple, statements he made to the asylum officer that he denied making outright. With regard to all of the various iterations of Mr. S.'s story, it originated with the declarations in support of the I-589, in which he states that he was, you know, worked for PSB and that he, you know, was a spy and things of that nature. Also then moving on to the asylum, maybe the asylum office happened first, I forget chronologically. At the asylum office interview, he went into, you know, not only did he say that he did all these things, but that his reports were handed up to his superiors who then took action on those. And, in fact, he expressed remorse to the asylum officer in that interview. And someone doesn't express remorse unless they are, you know, they've done something that they feel is wrong. With regard to the asylum officer's notes, there's no indication that there's anything incorrect about those notes so that they are not accurate as they are portrayed. Clearly they are shorthand, clearly they are, you know, notes. However, the assessment to refer that came out as a result of that tracks with the asylum officer's notes and also with her testimony. Now, she did say in her testimony that she doesn't recall, she doesn't have a specific recollection. However, there are things that she did as a matter of course when she was conducting these interviews, specifically talking about whether or not an interpreter seemed to be going off on a tangent or speaking much longer than the individual himself did. And in those cases, if she thought there was a difficulty with the interpreter, she would stop the interpretation. Or if there was excess verbiage, she would warn them or make a note that that was happening. And throughout that, so as far as whether or not there was material representation, I think that the basis for that is pretty clear in the case, in the evidence of record. Here's a problem I have with the finding that he was himself a persecutor because he seems not to have been telling the truth. And we don't quite know what he did. And he never says, I did a lot of things, like he wasn't in the room when the torturing was going on, he wasn't himself a torturer. He said, according to his testimony, well, I gave them names of people, and they were then either tortured or not, depending on what the other people in my organization did. Well, we've got a lot of case law, at least some case law, that kind of draws a line as to what kind of participation constitutes somebody being a torturer, a persecutor, or not. I think under our case law, if the only thing he did was to say, well, you know, I've been talking to these people in a taxi cab, and I've kind of said, well, here's what they've said, or I've disguised myself as a bum for a couple of days, and here's what they said, I don't know that that qualifies him under our case law as a persecutor. Well, I don't think the case law requires that the individual be involved in any kind of physical acts against an individual known to be, to fall under the persecutor bar. So in this particular case, and you're right, Your Honor, there is plenty of case law, or there seems to be plenty of case law. He doesn't fall in between the two poles is where my problem is. Right, and I believe that, I don't usually, I don't remember case names very well, but I remember concepts more, I guess that's a product of my upbringing. But there is, I know one of the case laws talks about a continuum of activity. So he could be anywhere along that continuum and still be considered a persecutor is my understanding of the law. Of course he could, but the question is, where is he on this continuum? And all we have is his testimony, which we don't believe, or at least the I.J. didn't believe. And in my view, the I.J. was justified in not believing it. But, okay, so what is the truth? All we know is that the I.J. didn't believe what he did say. I think in coming to the adverse credibility determination, I don't know that the I.J. said any one particular thing he said was untrue. What she based it on was that there were so many different shifting misrepresentations, so many variations of the theme, that that's why she found him to be not credible. But here's my problem. If we need to find, or if the I.J. needed to find that he engaged in a certain level of activity to be a persecutor, for example, was he in the room while the torture took place? Or did he know the names, turn them in with the virtual certainty that torture would take place? I mean, wherever we are on the continuum, there has to be a finding that this is what he did. This constitutes persecution for purpose of the persecution bar. Well, I don't know what he did. I know what he testified to. He's clearly trying to minimize what he did, and the I.J. doesn't really believe the minimization, but we don't know what he did. And I sense the frustration with the court as well. And like I said earlier, reading the testimony throughout and the various declarations that were made, it is very difficult to find out what it was that he actually did and how he participated. And if we don't know what he did, how do we know if he was a persecutor? Well, that's a very good point, Your Honor. But that doesn't necessarily mean that he – well, that might mean that he's not subject to the persecutor bar. That doesn't necessarily mean that he is eligible for asylum or withholding or removal. That was the point of my earlier question. What if we put the persecutor bar to one side? Has he shown himself to be in well-founded fear on account of a protected ground? Yeah. That's the difficulty with the persecutor bar because of the – I guess we tend to believe what's closer in time to the actual circumstances that are being talked about, and that was the A.O. The asylum office interview was the earliest thing in time. As you move away from that, he starts backtracking on what it was he did in his involvement. When the story gets better, you tend to believe the later story. That's one way of looking at it is that he started out with some pretty inculpatory statements and then backed away from it. And I think the difficulty with persecutor bar in this case is just, as Judge Fletcher pointed out, if you look at his own statements and descriptions of what he did and you look at his admissions on one end of the extreme, I think he probably does qualify for the bar under the persecutor bar. And if you look at the conduct on the other end of the spectrum that he testified to, it probably isn't enough for the persecutor bar. Did the I.J. have the denial in the alternative that he's basically found incredible and so therefore he's not entitled to asylum withholding? And then even if he were deemed to be credible as to the statements that would be the most inculpatory statements, then the persecutor bar would apply? Well, I think that in this particular case, because we have pretty much two separate proceedings, the first proceeding really talked about was involved with the asylum withholding claims and the CAT claim, of course, which he eventually was granted. The second was the adjustment of status. And the adjustment of status, the persecutor bar, as my understanding, is not, even if you're found to be barred by the persecutor bar, that does not make you ineligible for adjustment of status. It then becomes a discretionary ruling by the immigration judge, whether or not, even if the individual is not, I mean, even if we can't determine where on that continuum this individual is, does she feel or he feel that they are eligible for adjustment of status as a matter of discretion? And that's where that, and the immigration judge in this case, found that as a matter of discretion he was not eligible for the adjustment of status. And because of the fact that, based on the willful misrepresentation of fact, but not necessarily because of the persecutor bar. At that point it's defined that he was engaged in material misrepresentation in order to obtain a benefit. There's also a material inconsistency with his, with him saying, yes, I was a spy for the PSP. Yes, I wrote reports. Yes, I turned those reports into my superiors. But I never put anything in those reports that could harm anybody. And even though that's what the whole basis of my spying was so that, you know, I spied on people who were supposedly anti-government, supposedly socialists, supposedly, you know, these youth groups who were plotting to overthrow the government. You know, I did all these things, but I never, you know, I never put anything in there that could inculpate anybody. That's an internal inconsistency I think that also the immigration judge and the board picked up on in this case. So I think from that perspective, the immigration judge was correct in her findings, and the boards going along with that are affirming that it was correct as well. Okay. Thank you. Thank you. Mr. Calvin, you have some time. First of all, let me return to the fact that the immigration judge concluded a conclusion which the board adopted, that Petitioner did not personally persecute anyone. He was not present. He was not involved in direct persecution. What it appears from the record that Mr. Issa was involved in was the collection of metadata. Okay. He talks to individuals in the taxi cab, and then he reports what he heard. That doesn't sound like meta. It sounds like individualized data. He's collecting information about who's picking up where, what he heard. There's no indication that he had any involvement in the processing of the data, what was to be done with that data. Didn't he at one point admit that his job was to collect information on people who were against the government? I believe that was a comment from the asylum office, Officer Dougs. And then at other times he said he didn't write, he didn't put anyone's name in any reports, right? Yes. And then he said he did put names in the reports. And then he said, isn't this, maybe I'm wrong. But didn't he agree that these were reports with people's names in them and people, then he said, were never questioned? I believe that, so recalling the transfer, that he was asked about a specific person who he was speaking about, and then when he was asked why he says they were never questioned, I saw them a week later. I saw them ten days later, you know. Nothing ever happened to them. Was there anything else? I had a couple other points I wanted to raise. Sure. His first nexus is that if we remove the persecutor bar, I think the nexus would be to impute a political belief. Because GISA testifies that his problems begin when he decides he's uncomfortable with this entire process and seeks to leave it. To which people then, the agency he's working for says we put too much time into you, into training, that if you're not forced you're against us. So that is a nexus to, at least in the minds of people who he fears, is a political belief. I think that one of the reasons, another reason the asylum officer notes, not questioning that anything in it is not accurate, I have no reason to doubt it, but what I question is what's not in it. Also, it's sort of ambiguous the way the notes are taken. It's somewhat unclear what answers are connected to what questions. There are questions that seem to be where the examiner, the asylum officer is going, and the answers may or may not be responsive to those questions, and it's a little unclear for that. The fact... Okay, now you're about a minute and 40 seconds over, so if you would sum up, that would be... Yes, I thought I had a minute and 40 seconds to go. No, it's counting. Yes, I will sum up. So if you'd sum up. I just want to end with that. The immigration judge did find, had to have found her card, because she did grant relief. That did find he had a well-founded fear and was troubled by some of the things that she did not know were the truth, but it would follow that since he was granted relief that the judge had to have found by clear and convincing evidence that he had established that he was subject to torture if he was returned to England. Thank you. Okay, thank you very much. Thank both sides for their arguments. The case of Esau v. Holder is now submitted for decision.
judges: Duffy, Fletcher, Nguyen